UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————— x
EDWARD A. SOILEAU, Individually and on :   Civil Action No.
Behalf of All Others Similarly Situated,  :
                                          :   CLASS ACTION
                          Plaintiff,      :
                                          :   COMPLAINT FOR VIOLATION OF THE
            vs.                           :   FEDERAL SECURITIES LAWS
                                          :
STEMLINE THERAPEUTICS, INC., IVAN         :
BERGSTEIN and KENNETH HOBERMAN,           :
                                          :
                          Defendants.     :
—————————————————— x   DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Stemline Therapeutics, Inc. ("Stemline" or the "Company"), as well as Company press releases and conference call transcripts and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.     This is a securities class action for violations of the anti-fraud provisions of the federal securities laws on behalf of all persons who purchased Stemline publicly traded securities between January 6, 2017 and February 1, 2017, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act").  These claims are asserted against Stemline and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases and filings with the SEC.

2.     Stemline is a clinical-stage biopharmaceutical company focused on discovering, acquiring, developing and commercializing oncology therapeutics.  The Company is developing several clinical stage product candidates, including SL-401, SL-701 and SL-801.  SL-401 is a targeted therapy directed to the interleukin-3 receptor present on a range of hematologic cancers.

3.     Throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public.  As a result of defendants' false statements, Stemline's stock traded at artificially inflated prices during the Class Period, reaching a high of $13.95 per share on January 10, 2017.

- 1 -

4.     On January 19, 2017, Stemline issued a press release announcing a proposed follow-on public offering (the "Offering") of the Company's common stock.  Subsequently, on January 20, 2017, Stemline announced the pricing of the Offering of 4.5 million shares of the Company's common stock at $10.00 per share, with projected gross proceeds of $45 million to Stemline.

5.     Then, on February 2, 2017, before the market opened, Adam Feuerstein ("Feuerstein") published an article on *TheStreet* reporting that on January 18, 2017, a cancer patient in a clinical trial of the Company's SL-401 in blastic plasmacytoid dendritic cell neoplasm ("BPDCN") died from a severe side effect tied to SL-401.  The article stated that on January 17, 2017, the patient had been diagnosed with capillary leak syndrome ("CLS") and died the next day, "having received only two of the scheduled five doses of SL-401 of the initial treatment cycle."

6.     Subsequently, on February 2, 2017, the Company issued a press release that provided an update on its ongoing pivotal Phase 2 trial for the treatment of BPDCN utilizing experimental compound SL-401, confirming that BPDCN "has no approved treatment."  The Company admitted receiving the report regarding the patient death on January 18, 2017, but continued with the Offering on January 19, 2017, without disclosing the patient death to investors.

7.     As a result of this news, Stemline's stock price dropped $4.15 per share, to close at $5.60 per share on February 2, 2017, a decline of 42% on volume of nearly 3.7 million.

8.     As a result of defendants' false statements, Stemline securities traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending the Company's share price down and causing economic harm and damages to members of the Class (as defined below).

- 2 -

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

11.    Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  Stemline's principal place of business is in this District and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

12.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the NASDAQ.

## PARTIES

13.    Plaintiff Edward A. Soileau purchased Stemline securities during the Class Period as set forth in the attached certification and was damaged thereby.

14.    Defendant Stemline is a clinical-stage biopharmaceutical company.  The Company is headquartered at 750 Lexington Avenue, New York, New York.  The Company's stock is traded under the ticker "STML" on the NASDAQ, an efficient market.

15.    Defendant Ivan Bergstein ("Bergstein") founded Stemline.  Defendant Bergstein is, and at all relevant times was, Chairman of the Board, Chief Executive Officer ("CEO") and President of the Company.

16.    Defendant Kenneth Hoberman ("Hoberman") is, and at all relevant times was, Chief Operating Officer ("COO") of the Company.

17.     The defendants referenced above in ¶¶15-16 are collectively referred to herein as the "Individual Defendants."  The Individual Defendants made, or caused to be made, false statements that caused the prices of Stemline securities to be artificially inflated during the Class Period.

18.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Stemline's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

19.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Stemline.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Stemline securities was a success, as it: (i) deceived the investing public regarding Stemline's prospects and business; (ii) artificially inflated the prices of Stemline securities; and (iii) caused plaintiff and other members of the Class to purchase Stemline securities at artificially inflated prices.

## SCIENTER ALLEGATIONS

20.     During the Class Period, the defendants had the motive and opportunity to commit the alleged fraud.  Defendants also had actual knowledge of the misleading statements they made and/or

- 4 -

acted in reckless disregard of the true information known to them at the time.  In doing so, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of Stemline securities during the Class Period.

## BACKGROUND

21.     Stemline is a clinical-stage biopharmaceutical company focused on discovering, acquiring, developing and commercializing oncology therapeutics.  The Company is developing several clinical stage product candidates, including SL-401, SL-701 and SL-801.  According to the Company's website, SL-401 is a targeted therapy directed to the interleukin-3 receptor present on a wide range of malignancies.  A Phase 2 potentially pivotal trial with SL-401 was enrolling patients with BPDCN.  The U.S. Food and Drug Administration ("FDA") granted SL-401 Breakthrough Therapy Designation based on data from the ongoing trial, which had demonstrated high overall response rates, with multiple complete responses.  According to the Company, patients were being followed for response duration and outcomes.  In addition, ongoing Phase 2 trials with SL-401 were enrolling patients with additional malignancies, including acute myeloid leukemia in remission with minimal residual disease, and advanced, high risk myeloproliferative neoplasms of unmet medical need.  A Phase 1/2 trial in relapsed/refractory multiple myeloma with SL-401 in combination with standard therapies was also enrolling patients.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

22.     On January 6, 2017, Stemline hosted a conference call to discuss a "Positive FDA Meeting and Agreement on expedited Pathway to Full Approval of SL-401."  During the call, in which both Hoberman and Bergstein spoke, defendant Bergstein stated the following:

> [W]e have reached an agreement with the FDA around an expedited full-service pathway for SL-401 in first line or previously untreated BPDCN.

- 5 -

\*       \*       \*

With regard to our clinical experience with SL-401 and BPDCN, currently we are conducting an ongoing phase 2 trial – which, by the way, is the largest by far prospective trial ever conducted in this indication. We have 32 patients who were exposed to SL-401 on the current phase 2 trial, as of our last data cut at ASH. And as I'll get into, we plan on adding another 8 to 12 to the cohort, to a new cohort, which will put us over 40.

If you add that to the previous phase 1/2 investigative sponsored study that preceded our study, we are going to have over 50 patients worth of experience here. So this is clearly a very sizable experience with our drug and this disease.

\*       \*       \*

The outcomes remain very encouraging both on the duration of response, the progression-free period, the ability to bridge patients to transplant who would never have been transplant candidates were it not for the quick remissions that SL-401 is inducing. And again, we continue to see this consistently.

We've also seen very consistent, manageable and predictable safety profiles, particularly important in diseases of middle-aged and elderly, of which BPDCN is. And the drug is a largely bone-marrow sparing, so we don't see the profound prolonged neutropenia associated with chemotherapy.  Which makes treating patients, and particularly the elderly, much more manageable and effective.

\*       \*       \*

Needless to say, we are very pleased with this outcome. We see this as a favorable path forward not only for Stemline's shareholders and the medical community at large, but importantly for BPDCN patients.

23.     Following this news, the price of Stemline stock increased from $11.35 per share on January 5, 2017 to $12.90 per share on January 6, 2017.

24.     On January 19, 2017, Stemline filed its Preliminary Prospectus for its Offering on Form 424(b)(5).  On January 20, 2017, Stemline filed its Prospectus for the Offering on Form 424(b)(5), which became effective on January 20, 2017.  The proceeds from the Offering are for: (i) clinical, regulatory, manufacturing and, if and when approved, potential commercial activities of SL-401; (ii) clinical development of SL-801 and SL-701; (iii) research and development activities; and (iv) other general corporate purposes.  Stemline sold at least 4.5 million shares of its common stock

to the public at $10 per share in the Offering (not including 675,000 shares granted to the underwriters in an over-allotment), with expected gross proceeds to Stemline of $45 million.

25.     The Prospectus for the Offering represented the following:

**Recent Developments**

On January 5, 2017, we announced an agreement with the U.S. Food and Drug Administration, or FDA, on the registration pathway for SL-401 in blastic plasmacytoid dendritic cell neoplasm, or BPDCN. To support the filing of a Biologics License Application, or BLA, for full approval in first-line BPDCN, we are currently enrolling an additional small patient cohort, into our ongoing Phase 2 trial. This cohort is expected to enroll between 8-12 first-line BPDCN patients. To date, approximately half of these new patients have been enrolled into the study.

*        *        *

**SL-401 in high-risk myeloproliferative neoplasms**

We are currently enrolling patients with certain advanced, high-risk myeloproliferative neoplasm, or MPNs, including chronic myelomonocytic leukemia, or CMML, myelofibrosis, systemic mastocytosis, and primary eosinophilic disorders, in a single arm, open-label, multicenter Phase 2 clinical trial. This trial has a lead-in dose escalation stage (Stage 1) and an expansion stage (Stage 2) designed to enroll patients at the dose and regimen determined by Stage 1. The objectives of this clinical study are to determine 1) safety and optimal dose in this indication, and 2) signals of clinical activity. Stage 1 of this trial has been completed and enrollment in Stage 2 is ongoing.

*        *        *

Some of the factors that we believe could cause actual results to differ from those anticipated or predicted include:

- the success and timing of our clinical trials, including safety and efficacy of our product candidates and patient accrual, and the accuracy of data generated from our trials; [and]

- our ability to obtain and maintain marketing approval from regulatory agencies for our products . . . .

26.     On February 1, 2017, Stemline's stock closed at $9.75 per share.

27.     On February 2, 2017, before the market opened, Feuerstein published an article on

*TheStreet* entitled "Side Effect Kills Cancer Patient in Stemline Therapeutics Drug Trial; Company

Raises Money." The article stated in part:

**Stemline's SL-401 has demonstrated robust overall tumor response rates in its clinical trial, but the drug is also now tied to three patient deaths from capillary leak syndrome**.

Investors who bought into a $45 million Stemline Therapeutics (STML) stock offering on Jan. 19 were not told that one day prior to the financing, a cancer patient in a clinical trial died from a severe side effect, a type of low blood pressure tied to the company's drug SL-401.

Stemline has disclosed two previous patient deaths related to the same SL-401 toxicity, known as capillary leak syndrome.

The third death in Stemline's SL-401 study due to capillary leak syndrome, not yet reported by the company but confirmed by a member of the patient's family, is troubling. It occurred after Stemline had already increased safety monitoring and added new dosing rules to reduce the incidence and severity of the side effect.

Capillary leak syndrome occurs when large volumes of plasma and other blood components leak from blood vessels into the body cavity. This leads to swelling and a sharp drop in blood pressure that can cause organ failure and death.

The inability to control serious, potentially fatal, side effects can derail otherwise highly effective experimental therapies, even cancer drugs. Last year, the U.S. Food and Drug Administration placed a clinical hold on a promising CAR-T cancer therapy from Juno Therapeutics (JUNO) because a handful of patients died from brain swelling. The Juno therapy remains on FDA clinical hold to this day, with most investors believing the company will be forced to abandon further development.

To date, SL-401 has demonstrated robust overall tumor response rates of 84%, including 56% complete or near-complete response in patients enrolled in its clinical trial. But the drug is also now tied to three patient deaths. Stemline cannot afford a safety setback or FDA clinical hold similar to what happened to Juno.

The company is rushing to complete enrollment totaling approximately 50 patients in the SL-401 phase II study by the end of the current quarter. Stemline intends to use the study as the basis for a marketing application to the FDA in the second half of the year.

That's an aggressive timeline, but one that could secure Stemline's first-ever cancer drug approval in 2018. If approved, SL-401 would be used to treat blastic plasmacytoid dendritic cell neoplasm, or BPDCN, an ultra-rare blood cancer that attacks a specialized form of immune cells.

- 8 -

Stemline was asked to confirm and provide more details about the death of the BPDCN patient on Jan. 18, one day before the company sold 4.5 million shares of stock at $10 per share. In response, Stemline Chief Operating Officer Ken Hoberman provided the following statement:

> We are not in a position to comment about any specific outcomes that may or may not have occurred in any of our existing trials. As you know, in any trial of an experimental agent for patients with advanced cancer, patient deaths often occur. When deaths occur in a trial, then careful analysis must be done to understand probable causes and relation, if any, of the death to the use of the experimental product. It would be inappropriate for Stemline to comment on the death of any patient or patients in a trial, including any trial of SL-401, until such an analysis has been conducted, has concluded, and has yielded any information that should be shared publicly.

According to her sister, who spoke with *TheStreet*, the patient in question was diagnosed with BPDCN last fall and recruited into Stemline's pivotal clinical trial for SL-401. The drug is administered as a daily infusion for five days every three weeks.

The patient received the first two doses of SL-401 on Jan. 12 and 13. Her third daily infusion was postponed because of deteriorating health due to side effects. On Jan. 17, the patient was diagnosed with capillary leak syndrome. She died the next day, having received only two of the scheduled five doses of SL-401 in the initial treatment cycle of the clinical trial.

"It happened really fast, out of nowhere ... We had lunch together the week before she went into the hospital. She was fine," said the patient's sister. (The patient is not being identified by name for privacy reasons.)

Stemline identified capillary leak syndrome as a serious side effect of SL-401 during the initial, dose-ranging stage of the phase II study, which enrolled 15 patients. One BPDCN patient died due to capillary leak syndrome. The same cause of death was suspected for a second patient diagnosed with advanced acute myeloid leukemia, according to Stemline filings with the Securities and Exchange Commission.

During the dose-ranging stage of the phase II study, Stemline implemented additional safety precautions to reduce the risk of capillary leak syndrome before enrolling additional BPDCN patients into the expansion stage of the study.

The extra safety vigilance appeared to be working. When Stemline last presented interim results from the SL-401 phase II study in December at the American Society of Hematology annual meeting, none of the subsequently enrolled BPDCN patients had experienced severe (worse than grade 2) capillary leak syndrome.

But that clean safety streak ended with the death of the BPDCN patient on Jan. 18, raising concerns that Stemline may not have the risk of fatal capillary leak syndrome under control.

28.     On February 2, 2017, Stemline issued a press release entitled "Stemline Therapeutics Provides Update on Pivotal BPDCN Trial," which stated in part:

> Stemline Therapeutics, Inc., clinical-stage biopharmaceutical company developing novel oncology therapeutics, provides an update on its ongoing pivotal Phase 2 trial in blastic plasmacytoid dendritic cell neoplasm (BPDCN), using Stemline's experimental compound, SL-401. BPDCN at present has no approved treatment.
>
> On January 18, the Company received a report that a patient death had occurred. The patient had developed capillary leak syndrome (CLS), a known, sometimes fatal, and well-documented side effect of SL-401. The cause of the patient's death has not yet been determined. The safety profile for SL-401 includes CLS, and there have been previous deaths reported in patients with CLS in this trial, which have been disclosed in public presentations. That CLS is an expected complication of the administration of SL-401 has also been identified in filings with the Securities and Exchange Commission (SEC) and U.S. Food and Drug Administration (FDA), as well as in the study's informed consent forms and other information provided to investigators.

29.     As a result of this news, Stemline's stock price dropped $4.15 per share, to close at $5.60 per share on February 2, 2017, a decline of 42% on volume of nearly 3.7 million.

30.     As a result of defendants' false statements, Stemline securities traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending the Company's share price down and causing economic harm and damages to members of the Class.

**LOSS CAUSATION/ECONOMIC LOSS**

31.     During the Class Period, defendants made false and misleading statements by concealing critical clinical safety data and engaged in a scheme to deceive the market. Defendants' conduct artificially inflated Stemline's share price and operated as a fraud or deceit on the Class. Later, when defendants' prior misrepresentations were disclosed to market participants, Stemline's share price plummeted, as the prior artificial inflation came out of the share price over time. As a

result of their purchases of Stemline securities during the Class Period, plaintiff and members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE
## AND FRAUD ON THE MARKET

32.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     The omissions and misrepresentations were material;

(c)     The Company's shares traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's shares; and

(e)     Plaintiff and other members of the Class purchased Stemline securities between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

33.     At all relevant times, the market for Stemline stock was efficient for the following reasons, among others:

(a)     Stemline stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Stemline filed periodic public reports with the SEC; and

(c)     Stemline regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

**NO SAFE HARBOR**

34.     Many (if not all) of defendants' false and misleading statements during the Class Period were not forward-looking statements ("FLS") and/or were not identified as such by defendants, and thus did not fall within any "Safe Harbor."

35.     Stemline's verbal "Safe Harbor" warnings accompanying its oral FLS issued during the Class Period were ineffective to shield those statements from liability.

36.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Stemline who knew that the FLS was false. Further, none of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made.

**CLASS ACTION ALLEGATIONS**

37.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Stemline publicly traded securities during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. The Company's stock is actively traded on the NASDAQ and there are 19.1 million shares of Stemline stock outstanding. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that

- 12 -

there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Stemline or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Common questions of law and fact predominate and include: (i) whether defendants violated the 1934 Act; (ii) whether defendants omitted and/or misrepresented material facts; (iii) whether defendants knew or recklessly disregarded that their statements were false; and (iv) whether defendants' statements and/or omissions artificially inflated the prices of Stemline securities and the extent and appropriate measure of damages.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

43.     Plaintiff incorporates ¶¶1-42 by reference.

44.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Stemline securities during the Class Period.

46.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Stemline securities.  Plaintiff and the Class would not have purchased Stemline securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

47.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Stemline securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934
### Act Against All Defendants

48.     Plaintiff incorporates ¶¶1-47 by reference.

- 14 -

49. During the Class Period, defendants acted as controlling persons of Stemline within the meaning of §20(a) of the 1934 Act. By virtue of their positions and their power to control public statements about Stemline, the Individual Defendants had the power and ability to control the actions of Stemline and its employees. Stemline controlled the Individual Defendants and its other officers and employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding plaintiff and the members of the Class damages and interest;

C. Awarding plaintiff's reasonable costs, including attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 10 2017                    ROBBINS GELLER RUDMAN
                                                      & DOWD LLP
                                             SAMUEL H. RUDMAN

*/s/ Samuel H. Rudman*

SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

- 15 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
davew@rgrdlaw.com

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)
frankj@johnsonandweaver.com

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)
scotth@johnsonandweaver.com

Attorneys for Plaintiff

DocuSign Envelope ID: C25F07AE-5FDF-46F8-817B-0D3541486CA0

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Edward A Soileau, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the complaint and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 1/26/2017 | 200 | 10.62 |
|  |  |  |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
|  |  |  |
|  |  |  |

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of February, 2017.

DocuSigned by:

_____

Edward A. Soileau